**2018 BNH 001**   Note:  This is an unreported opinion. Refer to LBR 1050-1 regarding citation.
_____

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW HAMPSHIRE**

In re:                                                                        Bk. No. 17-10796 -BAH
                                                                              Chapter 7

Joseph A. Foistner,
            Debtor


*James F. Laboe, Esq.*                  *Paul A. Petrillo, Esq.*
*Orr & Reno, P.A.*                      *Salem, NH*
*Concord, NH*                           *Attorney for Joseph A. Foistner*
*Attorney for Antonia Shelzi*


**MEMORANDUM OPINION**

**I. INTRODUCTION**

The matter before the Court is the "Ex Parte Motion to Extend Deadline to Object to Discharge Under 11 U.S.C. § 727 or Object to Dischargeability under 11 U.S.C. § 523 for Creditor Antonia Shelzi"[1] (the "Present Motion") filed by Antonia Shelzi ("Shelzi") and the objection thereto[2] filed by the debtor Joseph A. Foistner (the "Debtor").  Through the Motion, Shelzi seeks either (1) a *nunc pro tunc* extension of the deadline for filing complaints objecting to the Debtor's discharge and the dischargeability of her debt, which expired as to Shelzi on October 30, 2017, or (2) to retract her notice of withdrawal dated December 5, 2017 (the "Withdrawal") which withdrew her prior timely filed motion to extend the deadline to January 31, 2018.  The Debtor asserts that

_____
[1] Doc. No. 112.

[2] Doc. No. 113.

such relief under these circumstances is inconsistent with the Bankruptcy Code and the Bankruptcy Rules. For the reasons set forth below, the Court will allow Shelzi to retract the Withdrawal.

**II. JURISDICTION**

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**III. FACTS**

The facts are not in dispute. From the outset, the Court notes that the relationship between the Debtor, Shelzi, and her counsel, James F. Laboe of Orr & Reno, PA ("Laboe") can be described as acrimonious at best. By way of background, in December, 2002, Shelzi became a member of an entity managed by the Debtor known as Seff Enterprises & Holdings, LLC ("Seff"), which was previously established for the purpose of developing a twenty lot subdivision known as Waldorf Estates. Since 2005, however, the parties have been embroiled in litigation in both the state and federal courts arising from their failed partnership, with both parties asserting multimillion dollar claims against each other.

The Debtor filed a voluntary Chapter 7 petition on May 31, 2017. Pursuant to Fed. R. Bankr. P. 4004(a) and 4007(c), the Court established August 28, 2017 as the deadline for parties to file complaints objecting to the Debtor's discharge or the dischargeability of certain debts. At the Debtor's request, the Court extended the deadline as to all parties to October 30, 2017, after the meeting of creditors was rescheduled twice. Additionally, the Debtor assented to extensions of the deadline to January 31, 2018, for the Chapter 7 trustee (the "Trustee"), the United States

Trustee, and Newtek Small Business Finance, Inc. ("Newtek"). The Trustee, the United States Trustee, and Newtek, however, have recently filed timely motions seeking further extensions which have not yet been heard, and to which the Debtor does not assent.

On October 25, 2017, Shelzi filed a motion to extend the deadline for her to file a complaint objecting to the Debtor's discharge under 11 U.S.C. § 727 and to object to the dischargeability of her debt under 11 U.S.C. § 523 (the "Original Motion") to which the Debtor expressly did not assent.[3] She asserted that sufficient cause existed because "significant issues" remained outstanding after the Debtor's meeting of creditors and that other parties, like the Trustee, United States Trustee, and Newtek, intended to conduct examinations of the Debtor pursuant to Fed. R. Bankr. P. 2004 to investigate further. Shelzi contended that such examinations could "influence [her] understanding of [his] past and current finances or [his] ability to repay his debts," and that an extension of the deadline to the same date as these other parties, January 31, 2018, was necessary to avoid prejudice.[4] In light of the Debtor's lack of assent, the Original Motion was scheduled for hearing on December 6, 2017.[5] On November 28, 2017, the Debtor filed an objection to the Original Motion, principally arguing that given their long litigation history, Shelzi already had sufficient information to file a complaint objecting to his discharge or the dischargeability of her debt and would otherwise gain nothing by waiting for further production.

---

[3] Doc. No. 86.

[4] Id. at ¶ 11.

[5] Because the Original Motion was scheduled for hearing on December 6, 2017, well after the October 30, 2017 deadline, Shelzi also filed an "Emergency Ex Parte Motion to Stay Deadline to Object to Discharge under 11 U.S.C. § 727 or Object to DIschargeability under 11 U.S.C. § 523" seeking a stay of the deadline until the Original Motion could be heard (the "Motion to Stay"). Doc. No. 85. The Court denied the Motion to Stay as unnecessary because Fed. R. Bankr. P. 4004(b)(1) only requires that the request for an extension be filed prior to the expiration of the deadline.

3

Despite not having yet secured an extension of the deadline, on December 4, 2017, Shelzi filed a complaint against the Debtor seeking to except her debt from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and/or (a)(6). The following day, December 5, 2017, she filed the Withdrawal, withdrawing the Original Motion for the stated reason that it was moot in light of the commencement of her adversary proceeding. As a notice, the Withdrawal neither sought relief from nor required action by the Court and became effective upon filing.[6] Accordingly, the Original Motion was removed from the Court's calendar prior to the hearing scheduled for December 6, 2017.

On December 6, 2017, approximately twenty-one hours after the filing of the Withdrawal, Shelzi filed the Present Motion seeking a *nunc pro tunc* extension of the deadline to December 4, 2017, or, in the alternative, to permit her to retract the Withdrawal so that the Court could consider the timely filed Original Motion on its merits. In support, Shelzi explained that while Laboe believed that the relief requested by the Original Motion was obviated by the commencement of the adversary proceeding, he later realized that the absence of an extension of the deadline to the date of filing presented a "potential issue."[7] The Debtor immediately filed an objection, asserting that as a result of the Withdrawal, any deadline as it applied to Shelzi expired on October 30, 2017, rendering the Present Motion untimely under Fed. R. Bankr. P. 4004(b)(1).[8] Characterizing Shelzi's request to retract the Withdrawal as an attempt to circumvent the strict rules governing

---

[6] Technically, the Withdrawal requested that the December 6, 2017 hearing be cancelled because the underlying motion was being withdrawn, but that was merely a consequence of the Withdrawal itself and not a request for an order under Fed. R. Bankr. P. 9013.

[7] In the Present Motion and at oral argument, Laboe tried to argue that his error was caused in part by a Court clerk reportedly informing him *ex parte* that the Court "internally cancelled" the hearing on the Original Motion. The Court rejects this argument because (as Laboe acknowledged at the hearing) an attorney as experienced as Laboe should know not to rely on any such verbal communications—whether or not accurately reported—in the absence of an order entered on the docket.

[8] The Debtor also argues, and Shelzi does not dispute, that the Present Motion does not fall within Fed. R. Bankr. P. 4004(b)(2).

4

objections to discharge, the Debtor further emphasized that the substance of her complaint proved his earlier assertion that it could have been filed prior to October 30, 2017. On January 2, 2018, Shelzi filed a reply urging the Court to exercise its equitable powers to correct "an unusual procedural situation."[9]

On January 3, 2018, the Court conducted a hearing on the Present Motion. At the conclusion of oral arguments, the Court took the matter under advisement.

## IV. DISCUSSION

The Bankruptcy Rules apply a strict limitations period "to further the fresh start goals of bankruptcy relief by requiring creditors to promptly join their objections to discharge in order that the debtor and other participants in the proceedings may enjoy finality and certainty of relief." Dole v. Grant (In re Summit Corp.), 109 B.R. 534, 537 (D. Mass. 1990). Taken together, Fed. R. Bankr. P. 4004(a) and 4007(c) require that a complaint objecting to the debtor's discharge and/or the dischargeability of certain debts be filed no later than sixty days after the first date set for the meeting of creditors under 11 U.S.C. § 341(a). Both rules permit a party in interest to seek an extension of time for cause, but expressly require that "[t]he motion shall be filed *before the time has expired*." See Fed. R. Bankr. P. 4004(b)(1), 4007(c) (emphasis added). Pursuant to Fed. R. Bankr. P. 9006(b)(3), the Court may extend these deadlines "only to the extent and under the conditions stated in those rules," meaning that the excusable neglect standard is inapplicable. See Fed. R. Bankr. P. 9006(b)(1), (3). Fed. R. Bankr. P. 4007(c) does not provide any mechanism for extending the time to file a complaint seeking to except a debt from discharge after the time for doing so has expired. In contrast, Fed. R. Bankr. P. 4004(b)(2) permits the filing of a motion to

---

[9] Doc. No. 122 at ⁋ 8.

extend time to object to discharge after the time for doing so has expired, but applies only to motions that (1) are filed prior to the entry of the discharge and (2) are based on newly discovered facts that would form the basis for revocation under 11 U.S.C. § 727(d).

Turning to the Present Motion, Shelzi's first request for relief—a *nunc pro tunc* extension to December 4, 2017—is a nonstarter. Upon the filing of the Withdrawal, Shelzi ceased to have a timely filed request for an extension and, as a result, the time to file her complaint expired on October 30, 2017. As stated above, the Bankruptcy Rules simply do not permit the Court to extend the deadline to file a complaint objecting to the dischargeability of a debt upon a motion filed after such time has expired. See Sullivan v. Costa (In re Costa), BAP No. MB 12-032, 2013 WL 63916, at *4 (B.A.P. 1st Cir. Jan. 3, 2013); Lure Launchers, LLC v. Spino (In re Spino), 306 B.R. 718, 721 (B.A.P. 1st Cir. 2004).

Shelzi's alternative request for relief is a more difficult question. If permitted, the retraction of the Withdrawal would have the effect of reviving the Original Motion, affording her a timely filed motion to prosecute, despite the fact that, as of right now, her complaint was filed after the deadline for doing so expired. Thus, the practical result of the retraction of the Withdrawal is, at least arguably, similar to an out of time request for an extension. The matter is further complicated by the lack of a clear standard applicable to a request to retract a withdrawal. To be sure, the accidental or mistaken withdrawal of a document is an uncommon problem, but the issue presented is unique because in nearly any other circumstance, a party could simply re-file the withdrawn document to no consequence upon a showing of excusable neglect.

Ultimately, the Court concludes that the request to retract the Withdrawal is unlike any other request for relief. Because the Withdrawal did not require leave of the Court to become effective, a request to retract it does not implicate reconsideration of an order under either Fed. R.

Civ. P. 59(e) or 60(b).[10] Similarly, a request to retract the Withdrawal is not akin to an untimely motion to extend because the retraction itself does not affect the deadline in question—that will occur or not based on the merits of the Original Motion. Indeed, the fact that any relief granted with respect to the deadline would be based on a timely filed motion under Fed. R. Bankr. P. 4007(c) suggests that the contemplated retraction is not inconsistent with any provision the Bankruptcy Code and Rules.

Having determined that the retraction of the Withdrawal is neither expressly authorized nor prohibited by any authority, the Court finds that it may be allowed as an exercise of the Court's equitable powers under 11 U.S.C. § 105(a). Therefore, to gauge whether such a retraction is appropriate under these circumstances, the Court must weigh the equities and consider the relative prejudice to each party. See Jamo v. Katahdin Fed. Credit Union (In re Jamo), 283 F.3d 392 (1st Cir. 2002) (holding that section 105(a) "may be invoked only if, and to the extent that, the equitable remedy dispensed by the court is necessary to preserve an identifiable right conferred elsewhere in the Bankruptcy Code.").

The prejudice to Shelzi arising from a denial of the request to retract the Withdrawal is clear—the loss of the opportunity to attempt to shield her debt from the Debtor's discharge. On the other hand, the Court cannot find that the Debtor will be prejudiced, unduly or otherwise, by consideration of the Original Motion. The Original Motion was filed timely and, but for the mistaken Withdrawal, would have been heard along with the Debtor's objection on December 6, 2017. If the Court were to entertain the Original Motion now, its merit and the parties' ability to argue it will be the same as it would have been on that date. While Laboe's error resulted in some delay, he nonetheless discovered it and took action promptly within twenty-one hours of the

---

[10] Fed. R. Civ. P. 59(e) and 60(b) are made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023 and 9024, respectively.

7

Withdrawal.  Therefore, most of the delay is not attributable to his mistake, but to the contested nature of the Present Motion.  In mitigation of that delay, however, there is no risk of further delay inasmuch as the adversary proceeding has already been commenced, albeit without leave of the Court.  Additionally, the Debtor's discharge remains vulnerable to attack by both the Trustee, United States Trustee, and Newtek, and the Court notes that Shelzi is the only party to whom the Debtor objected to receiving an extension of the deadline to January 31, 2018.  Accordingly, for all these reasons, the Court finds that the equities favor allowing Shelzi to retract the Withdrawal.

**V. CONCLUSION**

For the reasons articulated above, concludes that Shelzi should be allowed to retract the Withdrawal to permit consideration of the Original Motion.  Therefore, the Court will grant the Present Motion in part to the extent that it seeks to retract the Withdrawal, and deny it in part to the extent that it seeks an untimely *nunc pro tunc* extension of the deadline to file a complaint objecting to the dischargeability of Shelzi's debt.  The Court will schedule a hearing on the Original Motion in the ordinary course.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Concord, New Hampshire.


Dated: February 5, 2018                    /s/ Bruce A. Harwood
                                           Bruce A. Harwood
                                           Chief Bankruptcy Judge