2018 BNH 005          Note:   This is an unreported opinion. Refer to LBR 1050-1 regarding citation.
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                          Bk. No. 17-10796-BAH
                                                                Chapter 7

Joseph A. Foistner,
               Debtor


*James F. Laboe, Esq.*                          *Paul A. Petrillo, Esq.*
*Orr & Reno, P.A.*                              *Salem, NH*
*Concord, NH*                                   *Attorney for Joseph A. Foistner*
*Attorney for Antonia Shelzi*


## MEMORANDUM OPINION

## I. INTRODUCTION

The matter before the Court is the "Debtor's Motion and Memorandum to Support Debtor's Motion to Vacate Judgment or Order Due to Fraud, Misrepresentation, or Misconduct by an Opposing Party"[1] (the "Motion to Vacate") filed by the debtor Joseph A. Foistner ("Foistner") and the objection thereto[2] filed by Antonia Shelzi ("Shelzi").  Through the Motion to Vacate, Foistner seeks relief from the Court's order dated February 14, 2018 overruling his objection to the appearance of Attorney James F. Laboe ("Attorney Laboe") and his firm, Orr & Reno, P.A., on behalf of Shelzi (the "Order Regarding Disqualification"), asserting that it entered as a result of

_____

[1] Doc. No. 190.

[2] Doc. No. 208.

fraud and/or misrepresentations made to the Court by Attorney Laboe.  For the reasons set forth below, the Court will deny the Motion to Vacate.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## III. FACTS

### A. Background

In December, 2002, Shelzi became a member of an entity managed by Foistner known as Seff Enterprises & Holdings, LLC ("Seff"), which was previously established for the purpose of developing a twenty lot subdivision known as Waldorf Estates in New Boston, New Hampshire. The homes, in turn, were to be constructed by two entities known as New Boston Estates, LLC ("New Boston Estates") and Waldorf Estates Builders, LLC ("Waldorf Builders").  It is fair to say that things did not go to plan, as the parties have been embroiled in litigation in both the state and federal courts arising from their failed partnership since 2005, with each asserting multimillion dollar claims against the other.

The acrimony between the two is further fueled by the fact that Shelzi has been represented by Attorney Laboe and Orr & Reno in all litigation against Foistner.  As implied by the matter now before the Court, Foistner asserts that Orr & Reno, and by imputation Attorney Laboe, cannot represent Shelzi due to a disqualifying conflict of interest arising from Foistner's prior relationship with Orr & Reno.  He alleges that he twice consulted Orr & Reno—once in 1995, and again in

2003—regarding the New Boston real estate project, producing "a wealth" of confidential information necessary for the representation.[3]   As such, Foistner contends, an attorney-client relationship was established in 1995 that continued beyond 2003.[4]

The present dispute is further framed by certain events that have taken place during the exceptionally protracted litigation among the parties, including Orr & Reno.  Specifically, both Foistner and Shelzi point to orders entered by different state court judges to support their positions with respect to whether Attorney Laboe and Orr & Reno should or should not be disqualified from representing Shelzi before this Court.  Therefore, a brief summary of the litigation history, which can be cobbled together from the uncontested record now before the Court, is necessary for context.  To be clear, this summary is expressly limited to providing a comprehensible framework to discuss the matters brought before this Court and is in no way meant to be complete or exhaustive.

The primary litigation between Foistner and Shelzi consists of two consolidated civil actions now pending in the Hillsborough County Superior Court (the "Primary Litigation").  The first was commenced in November, 2005, by Shelzi against Seff, Foistner, and his wife Laurie.[5]  The second was initiated in February, 2007, by Foistner, on behalf of himself, New Boston Estates, Waldorf Builders, and Seff, against Shelzi.[6]  The specific allegations asserted in the Primary Litigation are not germane to this dispute, but suffice it to say that both place the blame of the failure of the development at the foot of the other.  Although the parties' respective claims have

---

[3] Doc. No. 43 at ¶¶ 8-9.

[4] Doc. No. 43 at ¶ 10.

[5] See Shelzi v. Seff Enters. & Holdings, LLC, Docket No. 05-E-464.

[6] See Foistner v. Shelzi, Docket No. 07-C-113.

yet to be tried, the Court understands that there has been substantial activity over the years relating to the disposition of the subdivision itself.

On February 19, 2008, Foistner, on his own and on behalf of New Boston Estates and Seff, filed suit against Orr & Reno and Attorney Laboe in the Hillsborough County Superior Court (the "2008 Litigation").[7]  The thrust of the 2008 Litigation is that Orr & Reno and Attorney Laboe violated their fiduciary duties to him, New Boston Estates, and Seff by representing Shelzi against them in the Primary Litigation.  On September 12, 2013, Judge David A. Garfunkel granted in part and denied in part a motion for summary judgment filed by the defendants in the 2008 Litigation asserting that the breach of fiduciary duty claims were barred by collateral estoppel (the "Garfunkel Order").[8]  Given the emphasis that Foistner places on the Garfunkel Order, the Court will quote the relevant passages of Judge Garfunkel's reasoning rather than summarizing his ruling:

> [D]espite the defendants' arguments on the contrary, plaintiffs' fiduciary duty claims have not previously been resolved on the merits. On November 13, 2006, the court (Mangones, J.) in Shelzi v. Foistner, et al., Docket No. 216-2005-EQ-464, denied Foistner's request to remove Attorney Laboe as counsel based on an alleged violation of N.H. R. Prof. Conduct 1.9. The Court's order cited a July 18, 2006 letter from the Attorney Discipline Office declining to docket Foistner's complaint against Attorney Laboe. On November 18, 2008, the Court (Perkins, M.) in the same docket, denied Foistner's further motions raising alleged misconduct on the part of Attorney Laboe and Orr & Reno. That order cited the court's November 13, 2006 order, and also granted Foistner's request to withdraw the motions pertaining to Attorney Laboe's and Orr & Reno's alleged misconduct.
>
> Collateral estoppel may not be employed by the defendants at this time for two reasons.  First, the Attorney Discipline Office's decision utilized a clear and convincing standard of proof, rather than the preponderance of the evidence standard required in the present civil action.  Collateral estoppel may not be utilized where the burden of proof in the first proceeding was greater than the burden of proof in the second proceeding. . . .

---

[7] Exhibit A, Doc. No. 44; see Foistner v. Orr & Reno, P.A., Docket No. 216-2008-CV-00083

[8] The motion for summary judgment was granted to the extent that the plaintiffs' counsel apparently conceded that New Boston Estates was never a client of Orr & Reno and therefore, could not have been owed any fiduciary duty.

Second, collateral estoppel is not appropriate because the plaintiffs have never had an opportunity to litigate the issue of whether the defendants violated their fiduciary duty. . . .   The court's 2006 order denying Foistner's requests to remove Attorney Laboe was based on the 2006 letter from the Attorney Discipline Office to Foistner, which declined to docket Foistner's professional conduct complaint against Attorney Laboe.  The court's 2008 order, in turn, was based on the 2006 order.  The court also noted that Foistner's motions pertaining to Attorney Laboe's and Orr & Reno's conduct had been withdrawn by Foistner prior to the issuance of that order.  Therefore, neither of those orders, nor the Attorney Discipline Office's 2006 letter, afforded Foistner a full opportunity to litigate the issue, and did not resolve the issue finally on the merits.  Accordingly, those claims are not barred by the doctrine of collateral estoppel.[9]

The Garfunkel Order is notable in two respects.  First, it indicates that, by September, 2013, Foistner twice sought to disqualify Attorney Laboe and Orr & Reno in the Primary Litigation to no avail.[10]  Second, despite the fact that the disqualification issue had been raised and rejected twice in the Primary Litigation, Judge Garfunkel concluded that those proceedings did not constitute "an opportunity to litigate the issue of whether the defendants violated their fiduciary duty."[11]  To put a finer point on it, Judge Garfunkel found that the issue of whether Attorney Laboe and Orr & Reno should be disqualified from representing Shelzi in the Primary Litigation was simply not the same issue as whether they breached any fiduciary duties to Foistner and/or Seff.

Ultimately, the 2008 Litigation was never tried.  Instead, Foistner, Orr & Reno, and Attorney Laboe entered into the following stipulation (the "Stipulation"):

1.  The case brought by the plaintiff, Seff Enterprises & Holdings, LLC ("Seff" or "Seff Enterprises") was previously stayed by this Court, as Seff previously filed for bankruptcy, so this Stipulation does not address the Seff claims.

2.  The plaintiff, Foistner, individually and by and through counsel, hereby stipulates and agrees that all claims asserted by him in his Complaint be DISMISSED WITH PREJUDICE to refiling any claims in State Court or Federal Court (excluding the U.S. Bankruptcy Court), and that each party bear their own

---

[9] Exhibit C, Doc. No. 190 at 4-6 (citations and parentheticals omitted).

[10] Without additional facts, the Court attributes no significance to the Attorney Discipline Office's refusal to docket the Debtor's complaint against Attorney Laboe.

[11] Exhibit C, Doc. No. 190 at 5.

costs and attorney's fees.  This Stipulation is intended to end this litigation in State Court, with no opportunity for the Plaintiff to re-file in the State Court.

3.  By entering this Stipulation, Foistner is not relinquishing any rights he or a trustee may have in the United States Bankruptcy Court to file an adversary proceeding or join an adversary proceeding brought by Seff.  It is the intent of the parties to this agreement that Foistner be permitted, to the extent permitted by law, to file a claim against the defendants, in United States Bankruptcy Court only.

4.  It is also agreed by the parties that an action filed by Foistner in the United States Bankruptcy Court, within one year of the date of the judgment, would not be time barred, pursuant to NH RSA 508:10.[12]

The state court signed the Stipulation on August 13, 2014, with the notation "case closed."[13]  Thus, the only remaining plaintiff in the 2008 Litigation is Seff.  As a result, the state court has stayed the 2008 Litigation pending completion of Foistner's bankruptcy and the Primary Litigation.[14]

As suggested by the Stipulation, the parties' legal battles expanded to the Bankruptcy Court during the 2008 Litigation.[15]  Foistner initially filed a voluntary Chapter 7 petition on behalf of Seff on May 21, 2009.[16]  In the face of a no-asset report filed by the Chapter 7 trustee, and a motion to dismiss filed by Shelzi asserting that Foistner lacked authority to file Seff's petition, Judge Mark Vaughn dismissed the case pursuant to 11 U.S.C. § 305(a)(1), concluding that the state court was "the proper forum for the Foistner/Shelzi dispute."  In re Seff Enters. & Holdings, LLC, No. Bk. 09-11862-MWV, 2009 WL 2843308, at *2 (Bankr. D.N.H. Aug. 26, 2009).  Less than a month after the dismissal of the voluntary Chapter 7 case, three creditors commenced an involuntary Chapter 7 case against Seff on September 15, 2009.[17]  Judge Vaughn again dismissed the case

---

[12] Exhibit B, Doc. No. 44.

[13] Id.

[14] Exhibit C, Doc. No. 208.

[15] The Court may take judicial notice of its own dockets.  LeBlanc v. Salem (In re Mailman Steam Carpet Cleaning Corp.), 196 F.3d 1, 8 (1st Cir. 1999).

[16] See Bk. No. 09-11862-MWV.

[17] See Bk. No. 09-13568-MWV.

pursuant to 11 U.S.C. § 305(a)(1) for essentially the same reasons, noting, however, that "the bankruptcy petition was motivated by a desire to litigate in federal Court." In re Seff Enters. & Holdings, LLC, No. Bk. 09-13568-MWV, 2010 WL 7326760, at *3 (Bankr. D.N.H. Feb. 26, 2010).

In May, 2014, Seff, New Boston Estates, and Waldorf Builders each filed voluntary Chapter 7 cases.[18]  Separate trustees were appointed, but each case proceeded more or less in parallel.  The trustees filed no-asset reports in their respective cases on July 7, 2015.  Although Shelzi and Orr & Reno only appeared in these cases to seek confirmation that the automatic stay did not bar the Primary Litigation from continuing against Foistner personally, Foistner repeatedly objected to Attorney Laboe's appearance and sought his removal as counsel to Shelzi.  The Court denied these requests on the basis that there was nothing from which to remove either Attorney Laboe or Orr & Reno, given that Shelzi was not actively participating in the cases (except to object to Foistner's pleadings), particularly once the cases were fully administered.  Similarly, the Court abstained from hearing a complaint filed by Foistner in the New Boston Estates case in which he, his wife, Seff, Waldorf Builders, and New Boston Estates asserted 3,258 counts against Orr & Reno and Attorney Laboe ranging from fraud to racketeering, concluding that there was neither jurisdiction nor a bankruptcy purpose to litigating the claims of non-debtor third parties against in a fully administered Chapter 7 case.[19]  All three cases are now closed.

---

[18] See In re Seff Enters. and Holdings, LLC, Bk. No. 14-11000-BAH; In re New Boston Estates, LLC, Bk. No. 14-10994-BAH; In re Waldorf Estates Builders, LLC, Bk. No. 14-10993-BAH.

[19] See New Boston Estates, LLC et al. v. Orr & Reno, P.A. et al., Adv. Pro. No. 16-1034-BAH.  It is curious that Foistner chose to pursue these claims in the New Boston Estates case considering that Judge Garfunkel found that New Boston Estates was never a client of Orr & Reno.

On May 20, 2016, the Debtor filed a motion in the Primary Litigation seeking to, among other things, remove Orr & Reno and Attorney Laboe as counsel of record for Shelzi.[20]  Generally, the motion sets forth a litany of allegations of fraudulent conduct by Attorney Laboe in the state and federal courts and emphasizes Judge Garfunkel's finding that "Plaintiff's fiduciary claims have not previously been resolved on the merits."[21]  By order dated August 13, 2016, Judge David W. Ruoff denied the motion finding that "[i]t is the law of this case that counsel is not disqualified" (the "Ruoff Order").[22]  The Ruoff Order states in full:

> For the third time in the pendency of this case, Mr. Foistner, acting in his pro se capacity, requests the disqualification of counsel for Ms. Shelzi. The Court notes that Attorney Aivalikles, counsel of record for the corporate litigants, has not filed a pleading endorsing this request.
>
> The Court has already ruled on this exact issue in this case. The Court has carefully reviewed the pleadings and arguments from the prior instances in which this issue was raised in this case. The Court views this as a law-of-the-case issue. Mr. Foistner has raised the same issues in the past, presented the same arguments, and offered the same facts. Counsel for Ms. Shelzi has responded in kind.
>
> In the Court's view, this issue was resolved years ago. Mr. Foistner seems to suggest that the Court's Order on Defendant's Motion for Summary Judgment in the case of Foistner v. Orr & Reno, supports his contention that counsel for Ms. Shelzi made misrepresentations to the Court and submitted a "fake" letter from the Professional Conduct Committee (PCC). The Court disagrees with Mr. Foistner's interpretation of the order in that case. The Court also disagrees with the conclusion that the letter from the PCC is "fake." He offers no credible evidence to support his arguments. In fact, in reviewing the complete file, it seems that Mr. Foistner's litigation strategy is simply to disrupt the opposing side and that this issue about Orr & Reno's alleged prior representation - and requested disqualification - is more strategic than genuine.
>
> Therefore, the issue concerning whether counsel for Ms. Shelzi must be disqualified is resolved and will not be relitigated based on the same allegations. It is the law of this case that counsel is not disqualified. Any further attempts to litigate this same issue again in this case will be deemed frivolous. Mr. Foistner's request to disqualify counsel for Ms. Shelzi is DENIED.

---

[20] Exhibit C, Doc. No. 44.

[21] Id. at 12.

[22] Exhibit E, Doc. No. 44 at 2.

Attorney Laboe's request for an award of attorney's fees incurred by Ms. Shelzi because of the pleadings filed on this issue is DENIED without prejudice. The Court will reconsider an award of fees if Mr. Foistner raises this issue again in this case.[23]

Based upon an order dated November 7, 2017 by Judge Amy B. Messer, it appears that Foistner filed another civil action against Shelzi, Attorney Laboe, and Orr & Reno in Hillsborough County Superior Court in 2016 (the "2016 Litigation").[24] The parties, including Shelzi who attached the order to her pleadings, have offered no context for this order or any information regarding the 2016 Litigation. As a result, the Court only knows that Foistner apparently filed a civil action "alleging over twelve thousand counts against the defendants for their role in a failed business relationship between the parties and the subsequent legal fallout," and that Judge Messer found that Foistner's amended complaint should be dismissed as to Attorney Laboe and Orr & Reno as having failed to remedy the deficiencies in his original complaint as outlined in a prior order, which is not part of the record before this Court.[25]

B. Procedural History

Foistner filed a voluntary Chapter 7 petition on May 31, 2017. Attorney Paul A. Petrillo ("Attorney Petrillo") is Foistner's counsel of record in this case and has filed all pleadings on his behalf. Victor Dahar was appointed the Chapter 7 trustee (the "Trustee"). Foistner has not yet received a discharge as the Trustee, the United States Trustee, and creditor Newtek Small Business Finance, Inc. have all obtained extensions of the deadline to file complaints objecting to his discharge or the dischargeability of certain debts to June 29, 2018. To date, only Shelzi has

---

[23] Id. at 1-2.

[24] Exhibit A, Doc. No. 116; see Foistner v. Shelzi, 216-2016-CV-00555.

[25] Id. at 1, 4.

commenced an adversary proceeding against Foistner seeking to have her debt excepted from discharge pursuant to 11 U.S.C. §§ 523(a)(2), (a)(4), and/or (a)(6).[26]

On February 26, 2018, the Trustee filed a Notice of Abandonment of Property, including Foistner's claims in the Primary Litigation, the 2008 Litigation, and a lawsuit Foistner filed against Judge Ruoff, as being burdensome or of inconsequential value to the estate.[27]  The Trustee subsequently withdrew both the Notice of Abandonment and the Amended Notice of Abandonment on February 28, 2018, meaning that these claims remain property of the estate.[28]

### 1. Foistner's Objection to Attorney Laboe's Appearance

On June 5, 2017, Attorney Laboe filed a notice of appearance and request for notice on behalf of Shelzi.  On August 25, 2017, Foistner filed an objection to Attorney Laboe's notice of appearance.[29]  The objection briefly stated Foistner's contention that Attorney Laboe's representation of Shelzi in his bankruptcy case is substantially related to the matter for which he was represented by Orr & Reno, and that Shelzi's interests are materially adverse to his own.

---

[26] See Adv. No. 17-1083-BAH.  Because Foistner alludes to this in the Motion to Vacate, the Court notes that the filing of this adversary proceeding was neither straightforward nor uneventful.  As outlined in the Court's memorandum of decision dated February 5, 2018, see In re Foistner, Bk. No. 17-10796-BAH, 2018 WL 718379, at *1 (Bankr. D.N.H. Feb. 5, 2018), Shelzi filed a request for an extension of time to file her complaint and Foistner opposed, causing the matter to be scheduled for hearing.  Prior to the hearing, however, Shelzi filed her complaint, albeit after the deadline to do so had expired and without leave of the Court.  Then, on the eve of the hearing on her request for an extension, Shelzi withdrew her motion, erroneously believing the matter was obviated by the filing of her complaint.  Less than a day later, Shelzi realized her mistake and filed a motion seeking either a *nunc pro tunc* extension of the deadline to the date she filed her complaint or, alternatively, permission to retract her withdrawal.  Ultimately, the Court allowed Shelzi to retract the withdrawal, reasoning that the equities favored this result given the absence of prejudice to Foistner.  After a further hearing on the original request for an extension, the Court granted Shelzi an extension of the deadline to the date she filed her complaint, rendering it timely.

[27] Doc. No. 167.  The following day, the Trustee filed an amended Notice of Abandonment.  Doc. No. 170.

[28] Doc. Nos. 172, 173.

[29] Doc. No. 43.

10

Notably, however, the objection did not request any relief from the Court.  As such, the Court took no action with respect to the objection, even though Shelzi filed a response the following day.[30]

On November 28, 2017, Foistner filed an amended objection to Orr & Reno's appearance on behalf of Shelzi (the "Amended Objection").[31]  The Amended Objection raised the invective considerably, with Foistner then asserting that "Attorney Laboe's filing of an appearance to represent Antonia Shelzi in various courts . . . and his subsequent arguments, statements, affidavits, and the like which were made in support of this appearance, *amount to ongoing fraud* . . . in this Court," which has caused him "more than $50-million in verifiable money damages."[32]  As an example of this alleged fraud, Foistner argued that

> [o]nce Attorney Laboe's deceptions and crimes were uncovered by Judge Garfunkel, and his and Orr & Reno's crimes were recorded in Judge Garfunkel's order, *Laboe again fabricated another lie and told this Court that Judge Ruoff had issued an order that he could represent Antonia Shelzi against the Debtor.*[33]

It is unclear when Foistner contends this misrepresentation was made to this Court.[34]  In any event, the Amended Objection, like the original, did not request any relief.[35]  Nevertheless, the Amended Objection repeatedly invoked precedent from the Supreme Court of the United States for the proposition that "[a]ll courts have the inherent equitable power to vacate a judgment that has been obtained through the commission of fraud upon the court."[36]

---

[30] Doc. No. 44.

[31] Doc. No. 106.

[32] Id. at ¶¶ 22, 25 (emphasis added).

[33] Id. at ¶ 38 (emphasis added).

[34] The Court suspects that this is actually a reference to proceedings in the Seff and New Boston Estates cases and not the case at bar.

[35] The Court's local rules require that "a motion shall be filed to request any action by the Court."  LBR 7102(b)(1); see generally LBR 7101-7104.

[36] Id. at ¶¶ 30-33, 39 (citing Universal Oil Prods. Co. v. Root Ref. Co., 328 U.S. 575 (1946) and Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944)).

Shelzi filed a response to the Amended Objection on December 13, 2017, which largely incorporated her prior response by reference.[37]  Predictably, the central premise of her response was that the issues raised by the Amended Objection have been addressed time and time again in the state court.  Shelzi cited the allegations of the 2008 Litigation as being virtually identical to Amended Objection and posited that pursuant to the Stipulation, "Foistner is precluded from seeking the relief he seeks in the present objection."[38]  She further argued that the Amended Objection asserted the same issues resolved by Judge Ruoff, and accused Foistner of essentially seeking *de novo* review of the Ruoff Order to avoid its preclusive effect under the principles of res judicata.  Shelzi also suggested that the Court consider permissive abstention to avoid interfering with the pending state court litigation and the issues that have already been decided.  Finally, the response to the Amended Objection directed the Court's attention to a copy of Judge Messer's order from the 2016 Litigation, stating that "on November 7, 2017, Foistner's lawsuit against Orr & Reno and the undersigned was dismissed."[39]

Like before, the Court initially took no action on the Amended Objection because it did not seek any affirmative relief from the Court.  Not until January 5, 2018, did Foistner finally file a motion requesting that the Amended Objection be scheduled for hearing, asserting that the alleged conflict of interest provides Shelzi an unfair advantage and the matter should be ruled upon by the Court.[40]  Shelzi objected, arguing that the issue has been moot for some time.[41]  On January 18, 2018, the Court granted the motion and scheduled the Amended Objection for hearing.

---

[37] Doc. No. 116; see also Doc. No. 44.

[38] Doc. No. 44 at ¶ 5.

[39] Doc. No. 116 at ¶ 3.

[40] Doc. No. 124.

[41] Doc. No. 128.

2. The Hearing and Order Regarding Disqualification

On February 14, 2018, the Court conducted a hearing on the Amended Objection, noting at the outset that notwithstanding the procedural deficiencies of the pleading, the Court understood that Foistner was seeking to disqualify Attorney Laboe from appearing and participating in the case on behalf of Shelzi.[42]  When asked why the Ruoff Order was not dispositive of the disqualification issue, Attorney Petrillo explained that he

> d[id]n't think there's ever been a full and fair determination that that is, in fact, the case. . . . it's been multiple occasions [Foistner has] filed these objections to [Attorney Laboe's] appearance – there has never been a full and final adjudication, including a claim that Mr. Foistner has against Orr & Reno for violation of the attorney-client relationship, fiduciary responsibilities, et cetera.[43]

Because Attorney Petrillo conflated the issue of disqualification with Foistner's alleged substantive claims against Orr & Reno, the Court engaged him in the following colloquy:

> THE COURT: And I'm not suggesting that . . . those claims have been adjudicated, but the issue . . . about whether Mr. Laboe [and] Orr & Reno had represented Mr. Foistner in a manner at all such as to disqualify them from representing Ms. Shelzi, that issue seems to have been litigated and decided in the state court.  And I've got Judge Ruoff's . . . August 13, 2016 order that . . . seems to say exactly that.  So . . . just with respect to the issue of objecting to Mr. Laboe's appearance on behalf of Ms. Shelzi, how is that not – how does that not bind me to the finding made in the state court that – there is no disqualification?
>
> MR. PETRILLO: Well, I think where I think the argument is we're here on a new one under Title 11, and I'm trying to make my argument that just because the state court said he could just -- he could represent her or arguably represent her in those state court claims, we are here anew on this whole separate issues that I think that the bankruptcy court basically put us in a new footing before a different court, a federal court here.
>
> THE COURT: But it's the same issue, isn't it? *This representation of Ms. Shelzi . . . . is the issue that was decided by Judge Ruoff.*

---

[42] Transcript of February 14, 2018 Hearing at 4:14-25.

[43] Id. at 5:13-25; 6:1-3.

13

MR. PETRILLO: *Yes, Your Honor*.[44]

Attorney Petrillo sought to minimize the impact of this concession by asserting that "as a matter of law, [the Ruoff Order] should be void,"[45] because "Mr. Foistner is alleging . . . that the information which led to Judge Ruoff's ruling was based on fraudulent information or misrepresented information and . . . that issue, as far as whether there's been fraud upon the court still remains."[46]  After the Court pointed out that it was prevented by the Rooker-Feldman doctrine[47] from looking behind a state court ruling, Attorney Petrillo questioned whether further research may yield an exception to the doctrine where the order was obtained by fraud.[48]  Notably, he did not request an opportunity to brief this issue.

For his part, Attorney Laboe argued that even if the Court were to put the Ruoff Order aside, the Stipulation, which resulted in the dismissal of Foistner's claims against him and Orr & Reno in the 2008 Litigation, provided a separate basis to deny the requested relief.[49]  In response, Attorney Petrillo asserted that "the [issue] wasn't as clear-cut as Attorney Laboe would have [the Court] believe," contending that the Garfunkel Order, though entered prior to the Stipulation, reflected a conflict between the state court judges on the disqualification issue.[50]

---

[44] Id. at 7:8-25; 8:1-11 (emphasis added).

[45] Id. at 10:6-8.

[46] Id. at 9:17-24.

[47] The Rooker-Feldman doctrine, drawn from two Supreme Court cases, deprives a federal court of jurisdiction over federal actions that essentially invite the court to review and reverse an unfavorable state court ruling.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005) (citing D.C. Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and Rooker v. Fid. Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)).

[48] Transcript of February 14, 2018 Hearing at 10:13-25.

[49] Id. at 12:6-25; 13:1-13.

[50] Id. at 13:19-25; 1-11.

In the end, the Court overruled the Amended Objection, concluding that "the state court determined that there was no disqualification -- no disqualifying interest and that's separate and apart from Mr. Foistner's signature on this stipulation."[51]  The Court entered the Order Regarding Disqualification following the hearing, incorporating its oral ruling by reference.

### C. The Motion to Vacate

On March 19, 2018, Foistner, through Attorney Petrillo, filed the Motion to Vacate, thirty-three days after entry of the Order Regarding Disqualification.  Although the motion purports to be focused solely on seeking relief from the Order Regarding Disqualification due to fraud, misrepresentation, or misconduct on the part of Attorney Laboe, the reality is far more rambling.[52] It begins with a statement of facts alleging that Shelzi, Attorney Laboe, Orr & Reno, and seven of the nine state court judges that have presided over his various cases are engaged in a longstanding conspiracy to victimize him and further Shelzi's desire for revenge.[53]  In this light, the Garfunkel Order, which denied Orr & Reno's motion for summary judgment in the 2008 Litigation on collateral estoppel grounds, represents not only a procedural victory to Foistner, but a personal

---

[51] Id. at 15:3-12.  Although the Court expressly based its ruling on the Ruoff Order and without regard to the Stipulation, the Court subsequently opined that the Stipulation could be an alternative ground for its ruling.  Id. at 15:13-16.

[52] The Court notes that the Motion to Vacate touches upon several unrelated matters over which Foistner remains aggrieved.  For example, he repeatedly complains that the Court erred in using its equitable powers in light of Attorney Laboe's unclean hands.  Docket No. 190 at 10, 15.  This is an apparent reference to the Court's ruling authorizing Attorney Laboe's retraction of his mistaken withdrawal of Shelzi's timely motion to extend time to file a complaint objecting to the dischargeability of her debt.  See In re Foistner, Bk. No. 17-10796-BAH, 2018 WL 718379, at *1 (Bankr. D.N.H. Feb. 5, 2018); see also footnote 26, supra.  Additionally, Foistner makes much of the fact that Attorney Laboe attempted service of the complaint on "the same day of the issuance of the order forbidding Attorney Laboe's already filed complaint against the Debtor." Doc. No. 190 at 10.  The Court's order did not, as Foistner suggests, "forbid" her complaint, and the Court rejects any implication that Attorney Laboe's premature service of the complaint rose to the level of contempt or misconduct.

[53] Doc. No. 190 at 2-3.

vindication of his claims.  He clearly views Judge Garfunkel as the sole honest judge who saw through the alleged conspiracy and "directed a full trial on the merits."[54]

With this in mind, the Court, through careful review and with some assembly, understands Foistner's argument as follows.  He asserts that "Judge Garfunkel explained in great detail that the matter of Laboe appearing in any court, in violation of the rules, is not barred from being tried by collateral estopel [sic], for it has never been adjudicated."[55]  Foistner further contends that the Garfunkel Order, "unlike Judge Ruoff's order, comports with the law and the rules."[56]  Therefore, he "alleges that this Court should rely on the ruling of Judge Garfunkel when applying Rooker-Feldman, and not the order of Judge Ruoff since that Order was in clear contravention of the lack of adjudication by a jury as to the issue of Orr and Reno's representation."[57]  Because the Court instead relied on the Ruoff Order, which Foistner insists "contravene[s] those of Judge Mangones and Judge Garfunkel and violate[s] the law and the rules,"[58] he argues that "[t]he Court erred by not considering the written standing orders of Judge David Garfunkel in Foistner et al, v. Orr & Reno et al."[59]

Foistner alleges that the error that he claims occurred was Attorney Laboe's fault.  Indeed, Foistner "respectfully asserts that this Court erred because of Laboe's misrepresentations, lies, and fraud, [which] allowed Judge Ruoff's unadjudicated, unlawful orders, recommended by Laboe, to be the guiding court decision upon which Rooker Feldman can be relied."[60]  He alleges that

---

[54] <u>Id.</u> at 3.

[55] <u>Id.</u>

[56] <u>Id.</u> at 7.

[57] <u>Id.</u> at 10-11.

[58] <u>Id.</u> at 4.

[59] <u>Id.</u> at 11.

[60] <u>Id.</u> at 4.

Attorney Laboe "intentionally and fraudulently misrepresent[ed] Judge Ruoff's decision as the only matter on this issue to this Court," conduct Foistner urges "amount[s] to obstruction of justice."[61]  Moreover, Foistner argues that "[t]he Court's decision to apply Rooker-Feldman to Judge Ruoff's improper findings was a direct result of Attorney Laboe providing this Court with knowingly false information, telling the Court that Judge Garfunkel's orders were no longer applicable because of a written stipulation that made Judge Garfunkel's Orders void."[62]  The Stipulation, he insists, "has nothing to do with the issue of Laboe's representation of Shelzi in this Court or any other court,"[63] though he does emphasize that he believes that it does not bar him from bringing his claims against Orr & Reno in the future.[64]

In sum, Foistner believes that the "Court's decision was clearly in error and manifestly unjust, and should be reconsidered."[65]  Specifically, he "contends that the Court should vacate the judgment overruling the Debtor's objection to attorney Laboe's continued representation of Shelzi until such time as the matter is fully adjudicated in the state court before a jury."[66]  The Court construes the reference to "until such time" as a request to disqualify Attorney Laboe and Orr & Reno unless they are able to produce a final judgment in their favor on the merits of Foistner's claims.

---

[61] Id.

[62] Id. at 11.

[63] Id. at 17.

[64] Id. at 11.

[65] Id. at 19.

[66] Id. at 10.

D. Shelzi's Objection to the Motion to Vacate

On April 10, 2018, Shelzi filed an objection the Motion to Vacate.  In it, she laments that she must once again address the same issues, and incorporates her prior objections by reference. Her main argument is as simple as it is brief—Foistner "has failed to articulate any properly supported factual bases to meet the exceptional burden imposed by Fed. R. Civ. P. 60(b)."[67]  As such, Shelzi requests that the Motion to Vacate be denied and the Court award reasonable attorney's fees and costs for having to once again respond to the same allegations.[68]

The remainder of the objection appears caught in the off-topic drift started by the Motion to Vacate, responding to Foistner's various allegations.  Indeed, a large portion of the objection addresses his fixation on the Garfunkel Order, emphasizing that, notwithstanding Judge Garfunkel's acknowledgment that the plaintiffs' claims had not yet been resolved in the merits, Foistner executed the Stipulation dismissing his claims in the 2008 Litigation with prejudice. Because the Stipulation provided a limited window in which he could re-file those claims in the Bankruptcy Court, Shelzi, and undoubtedly Attorney Laboe, vehemently deny that Foistner can do so now.  Finally, she asserts that the Rooker-Feldman doctrine and res judicata bar him from collaterally attacking the Ruoff Order.

E. The Hearing Regarding the Motion to Vacate

The Court held a hearing on the Motion to Vacate on April 18, 2018.  Attorney Petrillo began with the assertion that Attorney Laboe has on numerous occasions misrepresented the facts as they relate to Foistner and, as a result, there are conflicting decisions in the state court that have

---

[67] Doc. No. 206 at 5.

[68] Shelzi does not articulate the basis for her request for attorney's fees.

left Foistner's claims "unheard."   After arguing that Rooker-Feldman should apply to Judge Garkfunkel's conclusion that Foistner has a claim against Attorney Laboe and Orr & Reno that has not been adjudicated, Attorney Petrillo seemingly shifted further away from the Motion to Vacate, positing that the terms of the Stipulation did not bar Foistner from re-asserting those claims now or in the future.  When asked why this was relevant to the matter before the Court, Attorney Petrillo responded that the disqualification and breach of fiduciary duty issues were too intertwined to permit the Court to decide disqualification without a prior full adjudication of Foistner's substantive claims against Attorney Laboe and Orr & Reno.  For this reason, Attorney Petrillo felt that the Court was given the erroneous impression that the Stipulation rendered the Garfunkel Order moot, but conceded that nothing about the Stipulation had been concealed from the Court.

Reminding Attorney Petrillo that the Motion to Vacate alleged that the Court had been fraudulently induced to overrule the Amended Objection, the Court directed him to explain how. Attorney Petrillo reiterated Foistner's belief that Attorney Laboe has continuously presented courts with falsities and half-truths throughout the various litigations, which in turn yielded the Ruoff Order.  By analogy, he likened this fraud to "fruit of the poisonous tree," whereby an earlier misrepresentation made to the state courts ultimately corrupted this Court's decision. Nevertheless, Attorney Petrillo admitted that he could not identify any fraud or misrepresentations that occurred before this Court on February 14, 2018, that impacted the Court's ruling.  Upon this admission, he suggested that, although outside the scope of Motion to Vacate, there were other grounds for the relief requested, such as mistake or inadvertence due to his failure to raise these issues at the prior hearing, or equity.

Attorney Laboe, noting that the Court had all the relevant documents in its possession, insisted that he could not have defrauded the Court and that Foistner offered no factual basis for

his allegations.  In response to Attorney Petrillo's assertion that the issues were too intertwined to permit a decision on disqualification at this time, Attorney Laboe argued that there were no live claims to intertwine because Foistner dismissed them with prejudice in the 2008 Litigation, and, having failed to re-file them timely, has lost the ability to do so.  To that end, he cited the September 22, 2017 order entered by Judge Messer in the 2016 Litigation as evidence that Foistner's individual claims are no longer pending.[69]

At the conclusion of the hearing, the Court took the matter under advisement.

**IV. DISCUSSION**

A. Relief from Judgment under Rule 60(b)

Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"), made applicable to bankruptcy cases pursuant to Fed. R. Bankr. P. 9024, permits a court to relieve parties from a final order in exceptional circumstances.  Skrabec v. Town of N. Attleboro, 878 F.3d 5, 9 (1st Cir. 2017). Specifically, Rule 60(b) provides:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;

---

[69] Exibit C, Doc. No. 208.  Although the Court views Foistner's ability to re-assert claims against Attorney Laboe and Orr & Reno immaterial to the matter at bar, to dispel any notion that the Court placed undue weight on this document, the Court notes that Judge Messer's order does nothing more than acknowledge the undisputed fact that the Stipulation provided for the dismissal of Foistner's individual claims with prejudice, subject to the ability to refile them in the Bankruptcy Court within one year.

>   (5) the judgment has been satisfied, released or discharged; it is based on an
>   earlier judgment that has been reversed or vacated; or applying it
>   prospectively is no longer equitable; or
>
>   (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  Due to the extraordinary nature of the relief, the United States Court of the

Appeals for the First Circuit has instructed that "Rule 60(b) motions should be granted sparingly."

Keane v. HSBC Bank USA for Ellington Tr., Series 2007-2, 874 F.3d 763, 765 (1st Cir. 2017).

>   Generally, a movant seeking recourse under Rule 60(b) must, at minimum, demonstrate:
>
>   (1) that the motion is timely;
>
>   (2) that exceptional circumstances exist, favoring extraordinary relief;
>
>   (3) that if the judgment is set aside, the movant has the ability to mount a
>   potentially meritorious claim or defense; and
>
>   (4) that no unfair prejudice will accrue to the opposing parties should the motion
>   be granted.

Karak v. Bursaw Oil Corp., 288 F.3d 15, 19 (1st Cir. 2002) (citing Teamsters, Chauffeurs,

Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 20 (1st Cir.

1992)).  A motion under Rule 60(b) is timely if filed within a "reasonable time," but not more than

a year after the entry of the judgment or order if subsections (1), (2), or (3) form the basis for relief

requested.  Fed. R. Civ. P. 60(c).  The "exceptional circumstances" embodied in the second

requirement are those enumerated in the rule itself.  See Balzotti v. RAD Invs., LLC (In re

Shepherds Hill Dev. Co., LLC), 316 B.R. 406, 416 (B.A.P. 1st Cir. 2004) (citing Superline Transp.

Co., 953 F.2d at 20 n.3).  Depending on the exceptional circumstance alleged, the movant will be

required to make additional showings.  The third requirement reflects the pragmatic concern that

vacating a judgment should not be a futile exercise.  See Superline Transp. Co., 953 F.2d at 20.

Here, the Motion to Vacate is timely filed. Beyond that, however, the Court finds that it is wholly without merit. Foistner has failed to demonstrate any exceptional circumstances, or that he has a meritorious argument that would warrant the disqualification of Attorney Laboe and Orr & Reno. In light of Foistner's history of persistence with respect this issue and the absence of any prejudice to Shelzi, the Court will, in the interests of judicial economy, consider both the arguments contained in the Motion to Vacate and those raised for the first time during oral argument.

### 1. Futility of Relief

In order to more clearly address the deficiencies in Foistner's assertions of exceptional circumstances, the Court will first explain why vacating the Order Regarding Disqualification would be a futile act. In this context, the consideration of whether he has a meritorious argument for disqualification is akin to determining whether the Court committed legal error.[70] The Court undertakes this analysis first because it appears from Foistner's contentions that he either fundamentally misunderstands the Court's ruling, or simply refuses to accept it.

The Order Regarding Disqualification, which overruled the Amend Objection, was premised on the conclusion that Judge Ruoff, as evidenced by the Ruoff Order, "determined that there was . . . no disqualifying interest."[71] The Court found that under the principles of collateral estoppel the Ruoff Order was entitled to preclusive effect on the issue of the disqualification of Attorney Laboe and Orr & Reno. The Court further reasoned that the Rooker-Feldman doctrine barred consideration of Foistner's argument that the Ruoff Order was a product of fraud and should be void.

---

[70] Legal error alone is not grounds for relief under Rule 60(b). See Silk v. Sandoval, 435 F.2d 1266, 1267–1268 (1st Cir. 1971).

[71] Transcript of February 14, 2018 Hearing at 15:9-10.

"Collateral estoppel, or issue preclusion, applies in bankruptcy to bar the relitigation of factual or legal issues that were determined in a prior state court action."  Chapman v. Tracey (In re Tracey), 250 B.R. 468, 471 (Bankr. D.N.H. 2000) (citing Grogan v. Garner, 498 U.S. 279, 284 n.11 (1991)).  The preclusive effect of a prior state court judgment is determined by reference to the law of the state in which the judgment was rendered.  McCrory v. Spigel (In re Spigel), 260 F.3d 27, 33 (1st Cir. 2001).  Under New Hampshire law, issue preclusion bars relitigation of an issue when:

> (1) the issue subject to estoppel is identical in each action; (2) the first action resolved the issue finally on the merits; (3) the party to be estopped appeared in the first action or was in privity with someone who did; (4) the party to be estopped had a full and fair opportunity to litigate the issue; and (5) the finding at issue was essential to the first judgment.

Appeal of Morrissey, 165 N.H. 87, 94 (2013) (quoting Petition of Kalar, 162 N.H. 314, 320–21 (2011)).

The Ruoff Order easily satisfies all these elements.  The issue of the disqualification of Attorney Laboe and Orr & Reno was the subject of both the Amended Objection in this case and the motion underlying the Ruoff Order.  Not only did Foistner have a full and fair opportunity to litigate the issue in the Primary Litigation through his motion to remove them as counsel of record to Shelzi, it was apparently his third attempt to do so in that case.  The arguments made in that motion—most notably the alleged primacy of the Garfunkel Order—are the exact same arguments raised in both the Amended Objection and the Motion to Vacate.  The Ruoff Order is unequivocally the final word on the subject: "the issue concerning whether counsel for Ms. Shelzi must be disqualified is resolved and will not be relitigated based on the same allegations. It is the law of

this case that counsel is not disqualified."[72]  These conclusions were essential to the Ruoff Order, and despite Foistner's clear dissatisfaction, it was and remains a final order.

An integral part of Foistner's arguments is that the Garfunkel Order is entitled to deference under these same doctrines.  As he sees it, the Garfunkel Order should either be the controlling state court ruling, or, at the very least, evidence that the state courts have yielded contradictory decisions on the same issue.  The main problem with Foistner's theory is that it again conflates the issue of disqualification with his substantive claims against Attorney Laboe and Orr & Reno.  The Ruoff Order indisputably decided the disqualification issue—Attorney Petrillo admitted as much.  In contrast, the Garfunkel Order concluded that the prior disqualification determinations made in the Primary Litigation did not did not constitute "an opportunity to litigate the issue of whether the defendants violated their fiduciary duty."[73]  Therefore, Foistner's assertions that the Court did not consider the Garfunkel Order are simply wrong because the Court repeatedly acknowledged that his substantive claims, including breach of fiduciary duty, have not yet been fully adjudicated.  That was simply not the issue before the Court on the Amended Objection.

The Court further notes that no undue deference or consideration was given to the Stipulation.  In overruling the Amended Objection, the Court expressly found that "the state court determined that there was . . . no disqualifying interest *and that's separate and apart from Mr. Foistner's signature on this stipulation*."[74]  While the parties have spilled much ink regarding the impact of the Stipulation on Foistner's ability to resurrect the claims previously asserted in the 2008 Litigation, the Court did not intend to take any position.[75]  The Court understands the position

---

[72] Exhibit E, Doc. No. 44.

[73] Exhibit C, Doc. No. 190 at 5.

[74] Transcript of February 14, 2018 Hearing at 15:3-12 (emphasis added).

[75] In reviewing the transcript of the hearing, the Court acknowledges that it followed its finding that the Ruoff Order was dispositive without regard to the Stipulation with the statement that "[s]o either of those alternative grounds I

advanced by Shelzi is that Foistner no longer has any substantive claims against Attorney Laboe and Orr & Reno and, as a result, there is no underlying basis for disqualification, but the Court did not and need not reach that issue to overrule the Amended Objection.

In sum, the Court is unconvinced that it erred, and as such, finds that Foistner's arguments on the merits do not justify vacating the Order Regarding Disqualification.  Although the Court could stop here, judicial economy requires the Court to analyze his remaining arguments both to dissuade further requests for reconsideration and to enable the Court to address the frivolity of the Motion to Vacate.

### 2. Fraud

Rule 60(b)(3) authorizes the court to relieve a party from a judgment upon a showing that the adverse party has committed "fraud . . . , misrepresentation, or misconduct."  Fed. R. Civ. P. 60(b)(3).  It "is designed to afford protection against judgments that are unfairly obtained rather than against judgments that are factually suspect."  Karak v. Bursaw Oil Corp., 288 F.3d 15, 22 (1st Cir. 2002) (citing In re M/V Peacock, 809 F.2d 1403, 1405 (9th Cir. 1987); Rozier v. Ford Motor Co., 573 F.2d 1332, 1339 (5th Cir. 1978)).  As explained by the First Circuit,

> [t]here are two prerequisites to obtaining redress under this rule. First, the movant must demonstrate misconduct—such as fraud or misrepresentation—by clear and convincing evidence. Anderson v. Cryovac, Inc., 862 F.2d 910, 923 (1st Cir. 1988). Second, the movant must "show that the misconduct foreclosed full and fair preparation or presentation of [his] case." Id.

Karak, 288 F.3d at 20–21.  Misconduct can only substantially interfere with the full and fair presentation of a case when the movant is unaware of the alleged inaccuracies or did not have

---

think would allow me to make that finding."  Transcript of February 14, 2018 Hearing at 15:9-16.  In hindsight, it appears that the Court misspoke because the intent in relying on the Ruoff Order as "separate and apart" from the Stipulation was to reiterate the Court's repeated insistence that the parties not conflate the disqualification issue and Foistner's substantive claims against Attorney Laboe and Orr & Reno.

access to information that would have given the movant such knowledge at the time the alleged misconduct took place.  See Eastern Savs. Bank v. LaFata (In re LaFata), 344 B.R. 715, 725 (B.A.P. 1st Cir. 2006), aff'd, 483 F.3d 13 (1st Cir. 2007) (citing Ojeda–Toro v. Rivera–Mendez, 853 F.2d 25, 29 (1st Cir.1988)).

In the present case, Foistner alleges that Attorney Laboe committed a fraud upon the Court. Fraud on the court is a subcategory of fraud that targets the judicial process itself, rather than the opposing party.  See Bezanson v. Gaudette (In re R & R Assocs. of Hampton), 248 B.R. 1, 6 (Bankr. D.N.H. 2000) (citing Hazel–Atlas Glass Co. v. Hartford–Empire Co., 322 U.S. 238 (1944)).  "A 'fraud on the court' occurs where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989).  "Because corrupt intent knows no stylistic boundaries, fraud on the court can take many forms."  Id.

The Motion to Vacate contains two express assertions that Attorney Laboe made knowingly false representations to this Court.  First, it states that Attorney Laboe "obstruct[ed] justice" by "*intentionally and fraudulently misrepresenting* Judge Ruoff's decision as the only matter on this issue to this Court."[76]  Second, it states that "[t]he Court's decision to apply Rooker-Feldman to Judge Ruoff's improper findings was a direct result of Attorney Laboe providing this Court with *knowingly false information*, telling the Court that Judge Garfunkel's orders were no longer applicable because of a written stipulation that made Judge Garfunkel's Orders void."[77]  At

---

[76] Docket No. 190 at 4 (emphasis added).

[77] Id. at 11 (emphasis added).

oral argument, however, Attorney Petrillo seemingly distanced himself from these allegations, indicating that he could not articulate any misrepresentations Attorney Laboe made to this Court on February 14, 2018 in connection with the hearing on the Amended Objection.  Instead, he attempted to re-characterize the alleged fraud before this Court as being "fruit of the poisonous tree," stemming from Attorney Laboe's factually inaccurate statements made to the state courts.

To be clear, neither of the allegations against Attorney Laboe identified in the Motion to Vacate have any merit.  The Court had the Ruoff Order, the Garfunkel Order, and the Stipulation at the February 14, 2018 hearing, and came to its own conclusion regarding their interplay.  It would be difficult to characterize anything Attorney Laboe said about them as anything other than simply argument because the Court had the ability to independently verify the contents of those documents.  Moreover, Attorney Petrillo argued Foistner's controlling interpretation of the Garfunkel Order at the February 14, 2018 hearing, which the Court considered and rejected. Indeed, even Attorney Petrillo's recast "fruit of the poisonous tree" argument is the same argument he made regarding the Ruoff Order on February 14, 2018, which the Court rejected on Rooker-Feldman grounds.  As such, it strains credulity to say that the Court was somehow duped into overruling the Amended Objection.

For all these reasons, Foistner has failed demonstrate any fraud or misconduct that interfered with the presentation of his case.  The Court further notes that the assertion that a member of the bar of committed a fraud on the court is serious and disturbing, particularly when Attorney Petrillo apparently did so knowing that it was meritless, as evidenced by his abandonment of the argument at the hearing on the Motion to Vacate.

### 3. Mistake or Inadvertence

Rule 60(b)(1) permits the Court to vacate a judgment upon a showing of "mistake, inadvertence, surprise, or excusable neglect."  Fed. R. Civ. P. 60(b)(1).  Under First Circuit precedent, "mistake" under Rule 60(b)(1) does not apply to a court's mistaken ruling on a point of law because such a reading would undermine the stricter requirements for seeking to alter or amend a judgment pursuant to Fed. R. Civ. P. 59(e), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9023.  Fontanillas-Lopez v. Morell Bauza Cartagena & Dapena, LLC, 832 F.3d 50, 64 (1st Cir. 2016) (citing Silk v. Sandoval, 435 F.2d at 1267-1268).  Instead, the movant must demonstrate reasonable grounds for the mistake.  See In re Shepherds Hill Dev. Co., LLC, 316 B.R. at 416 (citing United States v. Proceeds of Sale of 3,888 Pounds Atlantic Sea Scallops, 857 F.2d 46, 48 (1st Cir. 1988)).  In other words, the movant "must make some showing of why he was justified in failing to avoid mistake or inadvertence."  Ben Sager Chemicals Int'l, Inc. v. E. Targosz & Co., 560 F.2d 805, 809 (7th Cir. 1977).

Attorney Petrillo raised mistake or inadvertence as a possible basis to grant the Motion to Vacate for the first time during oral argument.  His explanation of this theory was limited to the suggestion that the issues before the Court on April 18, 2018, should have been more thoroughly discussed on February 14, 2018.  Curiously, the only issue argued at the hearing on the Motion to Vacate that was not raised at the previous hearing was Foistner's contention that the Stipulation does not bar him from reasserting his claims from the 2008 Litigation, which is immaterial to the Order Regarding Disqualification to the extent that the Court relied on the Ruoff Order and not the Stipulation.  In any event, it is well-established that "[i]f a party simply inadvertently failed to raise the arguments earlier, the arguments are deemed waived."  Publishers Resource, Inc. v. Walker–Davis Publications, Inc., 762 F.2d 557, 561 (7th Cir. 1985).  Accordingly, Foistner has not demonstrated a mistake warranting relief under Rule 60(b)(1).

4. Any Other Reason Justifying Relief

Finally, Rule 60(b)(6), authorizes the court to relieve a party from a judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "This is the 'catch-all' provision, 'appropriate only when none of the first five sections pertain.'"  Ross v. Garcia (In re Garcia), 532 B.R. 173, 181–82 (B.A.P. 1st Cir. 2015) (citing Ahmed v. Rosenblatt, 118 F.3d 886, 891 n. 9 (1st Cir.1997)).  "Courts generally find extraordinary circumstances warranting relief under Rule 60(b)(6) only where the movant was not at fault in his predicament, and was unable to take steps to prevent the judgment from which relief is sought."  Roman v. Carrion (In re Rodriguez Gonzalez), 396 B.R. 790, 803 (B.A.P. 1st Cir. 2008); see also Claremont Flock Corp. v. Alm, 281 F.3d 297, 299 (1st Cir. 2002) ("If a party is partly to blame, Rule 60(b)(6) relief is not available to that party; instead, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.") (internal citations omitted).

Here, Attorney Petrillo, again for the first time at oral argument, contends that Rule 60(b)(6) entitles Foistner to an equitable ruling vacating the Order Regarding Disqualification.  As best as the Court can discern, this equitable basis for such a ruling is the allegation that the Ruoff Order is the product of a plethora of false statements made to the state courts over the years.  Not only is the record devoid of any evidence supporting the existence of such false statements, this is precisely the type of review of a state court order that the Rooker-Feldman doctrine prohibits.  See In re Skorich, 332 B.R. 77, 85 (Bankr. D.N.H. 2005) ("Under the Rooker–Feldman doctrine, federal courts lack jurisdiction over federal actions that essentially invite federal courts to review and reverse unfavorable state court judgments.").  Therefore, Foistner has not demonstrated any exceptional circumstances warranting relief under Rule 60(b)(6).

29

B. Shelzi's Request for Fees

In Shelzi's prayer for relief contained in her objection to the Motion to Vacate, she requests an "[a]ward of reasonable attorneys' fees and costs for having to *once again* respond to the same allegations."[78]  She does not, however, identify any basis for awarding such fees.  While Fed. R. Bankr. P. 9011(c)(2) might otherwise permit the Court to award attorney's fees as a sanction for the filing of a frivolous pleading, Shelzi has not complied with the safe harbor provision under subsection (c)(1)(A) which permits the offending pleading to be withdrawn within twenty-one days of service of a motion for sanctions, precluding such an award.[79]  See In re Claudio, 463 B.R. 190, 196 (Bankr. D. Mass. 2012) ("Failure to comply with this safe harbor provision is fatal to the sanctions request.").  Moreover, while the Court has the inherent power to impose a punitive non-contempt sanction, the First Circuit has warned that the "sanction demands heightened justification" when it has the effect of reversing the American Rule that each party bears its own attorney's fees and expenses.  Charbono v. Sumski (In re Charbono), 790 F.3d 80, 88 (1st Cir. 2015).  As a general proposition, the Court is also wary of exercising that power in a manner that is foreclosed by Fed. R. Bankr. P. 9011(c)(1)(A).  Accordingly, Shelzi's request for attorney's fees is denied.


C. Rule 9011

Fed. R. Bankr. P. 9011 "emphasizes responsible behavior on the part of [attorneys]" and requires them "to conduct [themselves] in a manner bespeaking reasonable professionalism and consistent with the orderly functioning of the judicial system."  Featherston v. Goldman (In re D.C.

---

[78] Doc. No. 208 at 8 (emphasis in original).

[79] Frankly, the Court cannot fathom why Shelzi chose to once again engage Foistner on the merits instead of filing a motion under Fed. R. Bankr. P. 9011.

Sullivan Co., Inc.), 843 F.2d 596, 598 (1st Cir. 1988), aff'd in part on rehearing en banc, 878 F.2d

1478 (1989).  It provides in relevant part:

> By presenting to the court (whether by signing, filing, submitting, or later
> advocating) a petition, pleading, written motion, or other paper, an attorney or
> unrepresented party is certifying that to the best of the person's knowledge,
> information, and belief, formed after an inquiry reasonable under the
> circumstances,—
>
>> (1) it is not being presented for any improper purpose, such as to harass or to
>> cause unnecessary delay or needless increase in the cost of litigation;
>>
>> (2) the claims, defenses, and other legal contentions therein are warranted by
>> existing law or by a nonfrivolous argument for the extension, modification, or
>> reversal of existing law or the establishment of new law;
>>
>> (3) the allegations and other factual contentions have evidentiary support or, if
>> specifically so identified, are likely to have evidentiary support after a
>> reasonable opportunity for further investigation or discovery; and
>>
>> (4) the denials of factual contentions are warranted on the evidence or, if
>> specifically so identified, are reasonably based on a lack of information or
>> belief.

Fed. R. Bankr. P. 9011(b).  "Rule 9011 demands that counsel's actions comport with an objective

standard of lawyerly performance."  In re D.C. Sullivan Co., Inc., 843 F.2d at 599.  Accordingly,

"[a] violation of Rule 11 . . . might be caused by inexperience, incompetence, willfulness, or

deliberate choice."  Sylver v. Sec. Pac. Servs. (In re Sylver), 214 B.R. 422, 428 (B.A.P. 1st Cir.

1997) (quoting Cruz v. Savage, 896 F.2d 626, 631 (1st Cir. 1990)).  If a court determines that an

attorney or party has violated Fed. R. Bankr. P. 9011, the court may impose an appropriate

sanction.  Fed. R. Bankr. P. 9011(c).  If it appears to the court that a party has violated Fed. R.

Bankr. P. 9011, the court may on its own initiative enter an order requiring the party to show cause

why the specific conduct outlined by the court does not violate subdivision (b).  Fed. R. Bankr. P.

9011(c)(1)(B).

As discussed above, the Motion to Vacate filed by Attorney Petrillo on behalf of Foistner was devoid of any legal merit or factual support for the arguments contained therein.  Indeed, it largely just rehashed the same arguments the Court previously rejected.  The Court is particularly troubled by the unsupported aspersions cast on Attorney Laboe, only to be walked back by Attorney Petrillo at oral argument.  Attorney Petrillo's immediate concession that he could not identify any fraud or misrepresentations made to this Court calls into question why the Motion to Vacate, *which is solely premised on the existence of a fraud on this Court*, was filed at all.  This, in light of the history of acrimony among the parties, raises the strong possibility that the Motion to Vacate was filed for an improper purpose, such as to harass Shelzi, Attorney Laboe, and Orr & Reno or otherwise engage in forum shopping.

For all these reasons, the Court will order both Foistner and Attorney Petrillo to appear and show cause why the Court should not impose sanctions against one or both of them for violations of Fed. R. Bankr. P. 9011.

## V. CONCLUSION

 For the reasons articulated above, the Motion to Vacate is denied.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate orders consistent with this opinion.

ENTERED at Concord, New Hampshire.

Dated: May 31, 2018                         /s/ Bruce A. Harwood
                                            Bruce A. Harwood
                                            Chief Bankruptcy Judge

32